**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LEE A. VINCENT,

    *Petitioner*,

vs.

DIRECTOR OF NEVADA DEPARTMENT OF CORRECTIONS, *et al.,*

    *Respondents*.

3:10-cv-00181-ECR-RAM

ORDER

This represented habeas action under 28 U.S.C. § 2254 comes before the Court on petitioner's motion (#16) for a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), as well as upon petitioner's motions (## 11 & 22) to substitute party.

### *Background*

Petitioner Lee Vincent challenges his Nevada state conviction, pursuant to a jury verdict of first-degree murder with the use of a deadly weapon. He is serving two consecutive life sentences with the possibility of parole after a minimum of twenty years on each life sentence.

The judgment of conviction was filed on January 22, 2009, and the Supreme Court of Nevada affirmed on direct appeal on February 3, 2010. The remittitur issued on March 2, 2010.

On or about March 29, 2010, petitioner, proceeding *pro se*, mailed the federal petition to the Clerk of this Court for filing.

Following preliminary proceedings and case screening, on January 25, 2011, the Court granted petitioner's motion for appointment of counsel. The Court noted in the order that, absent tolling or other circumstances, the state limitation period potentially would run through March 2, 2011, and the federal limitation period potentially would run through on or about May 4, 2011.

On February 28, 2011, petitioner, through the counsel appointed herein, filed a state post-conviction petition in the state district court, a counseled amending federal petition, and the present motion for a stay pending completion of the recently-initiated state post-conviction proceedings.

### *Preliminary Exhaustion Issue*

Respondents contend that a *Rhines* stay is not available in this case because the petition allegedly is wholly unexhausted rather than a mixed petition with both exhausted and unexhausted claims. There is no dispute that Grounds 3 through 5 are not exhausted, as these claims are being presented to the state courts for the first time in the contemporaneous state petition. The dispute as to exhaustion concerns only Grounds 1 and 2. In this regard, petitioner need present only one unexhausted claim to establish that the petition, as amended, is a mixed petition as to which a *Rhines* stay potentially is available.

The Court is not persuaded by respondents' first subsidiary contention that all claims presented in the amended petition must be deemed unexhausted because petitioner did not specifically plead exhaustion in the amended petition. Respondents rely upon conclusory pronouncements in two decades-old Ninth Circuit panel decisions in support of a general proposition that the burden is on the petitioner to plead and prove exhaustion "[t]o invoke the jurisdiction of the District Court." *See Williams v. Craven*, 460 F.2d 1253 (9th Cir. 1972); *Grove v. Wilson*, 368 F.2d 414 (9th Cir. 1966). In neither case was a petition dismissed on the basis that lack of exhaustion was conclusively established -- without any further ability of the petitioner to present argument on the exhaustion issue -- because the petitioner did not affirmatively plead exhaustion in the petition. Nothing in either brief opinion suggests that the Ninth Circuit was contemplating such a holding on apposite facts. Even without the

intervening Supreme Court jurisprudence discussed *infra*, the Court would be reluctant to extend such broad statements made in other contexts to the present circumstances.

In any event, there of course has been considerable "water under the bridge" in the approximately four decades since the cited decisions. *Inter alia*, the United States Supreme Court has suggested not only that exhaustion is not "jurisdictional" but further that lack of exhaustion is an *affirmative defense* in habeas practice that need not necessarily be pled initially by the petitioner. *See Jones v. Bock*, 549 U.S. 199, 212, 127 S.Ct. 910, 919, 166 L.Ed.2d 798 (2007)(discussing habeas practice); *Day v. McDonough*, 547 U.S. 198, 205-06, 126 S.Ct. 1675, 1681-82, 164 L.Ed.2d 376 (2006). Moreover, the Rules Governing Section 2254 Cases (the "Habeas Rules") were adopted in 1976, after the decisions relied upon by respondents. Rule 2 specifies the pleading requirements for a habeas petition. Rule 2 – just like the statute that it is patterned upon, 28 U.S.C. § 2242 – includes no express specific requirement that the petitioner include any statement as to exhaustion.

The only source for such a pleading requirement that the Court can discern is the requirement in Rule 2(d) that the petition must "substantially follow" either the model form appended to the Habeas Rules or a form prescribed by the district court's local rules. This Court's Local Rule LSR 3-1 requires that a petition filed by a represented petitioner either must be on this Court's required form or contain the information required by the model form in the appendix to the Habeas Rules. Both the model form and this Court's required form include exhaustion inquiries.

Particularly given the Supreme Court expressions referred to above, the Court will not apply the requirement that the petitioner substantially follow the required form in a manner that conclusively deems claims unexhausted solely because the petitioner did not initially provide information as to exhaustion. Any such failure to follow the required form as to the exhaustion inquiries, as with any other failure to fully comply with the requirements of the form, can be remedied through, *inter alia*, amendment.

The exhaustion issue in this case has been fully briefed on the motion to stay, and the Court simply addresses the issue directly.

The Court concludes that, at the very least, Ground 2 is exhausted.

In Ground 2, petitioner alleges that he was denied his right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments when the trial court failed to sever his trial from his codefendant's trial on pretrial and trial motions and failed to grant a post-verdict motion for new trial based upon the allegedly improper joinder.

A petitioner can fairly present a federal constitutional claim to the state courts for purposes of exhaustion by, *inter alia*, citing to federal or state case law invoking the federal constitutional guarantee relied upon and providing a statement of the facts that entitle him to relief on the constitutional claim. *See,e.g., Robinson v. Schriro*, 595 F.3d 1086, 1101-03 (9th Cir.), *cert. denied*, ___ U.S. ___, 131 S.Ct. 566, 178 L.Ed.2d 427 (2010).

In the direct appeal briefing, petitioner placed principal reliance upon the Nevada Supreme Court's decision in *Chartier v. State*, 191 P.3d 1182 (Nev. 2008), on the severance issue.[1] The state supreme court reversed in *Chartier* based upon the following holding:

> Chartier suffered unfair prejudice because the cumulative effect of the joint trial violated Chartier's right to a fair trial by preventing the jury from making a reliable judgment as to his guilt or innocence. *For this reason*, we reverse the judgment of conviction and remand to the district court for a new trial.
>
> . . . . .
>
> We conclude that the district court abused its discretion when it denied Chartier's motion to sever his trial from Wilcox's trial because the cumulative effect of joinder was so prejudicial as to affect Chartier's right to a fair trial.

191 P.3d at 1183-84 & 1185 (emphasis added).[2]

---

[1] See #15, Ex. 55, at 11-12 ("Appellant disagrees [with the State] and believes the *Chartier* analysis is applicable to the facts of this case."); *id.*, at 21 (citing *Chartier* in the concluding paragraph of the argument).

[2] *See also Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) (discussing the purpose of Rules 8(b) and 14 of the Federal Rules of Criminal Procedure with regard to, *inter alia*, a defendant's right to a fair trial). While petitioner also cited *Zafiro* on direct appeal, the Court is not sanguine that a general discussion of the purpose of certain rules of the Federal Rules of Criminal Procedure vis-à-vis the right of a defendant to a fair trial would fairly alert a state supreme court of the presentation of a federal constitutional claim. That is, citation to federal decisions applying federal criminal rules of procedure
(continued...)

Vincent's not only citation to-- but indeed principal reliance upon--the Nevada Supreme Court's *Chartier* holding, which premised reversal upon a violation of Chartier's right to a fair trial, fairly alerted the state supreme court in his case that he was claiming a violation of his right to a fair trial.

There is no analytical distinction under which petitioner's reference to "due process" in federal Ground 2 presents a separate and distinct constitutional claim from the exhausted claim of a denial of a right to a fair trial. The right to a fair trial derives directly from the right to due process.[3] The exhaustion of a claim of a denial of a right to a fair trial accordingly exhausts a claim also variously articulated as a denial of a "right to a fair trial and due process."

The Court is cognizant of the established precedent holding that general appeals to constitutional guarantees as broad as due process or a right to a fair trial are insufficient to exhaust a federal constitutional claim. Such is especially true with respect to the exhaustion of claims premised upon other specific federal constitutional guarantees. However, when the federal claim in question itself *is* a denial of the right to a fair trial, the petitioner has cited a decision reversing a conviction based upon the denial of that very same right, and the petitioner has presented detailed factual argument seeking to establish that he is entitled to reversal pursuant to that authority, the petitioner has gone well beyond merely making a general appeal broadly to a right to a fair trial or due process. *Cf. Robinson, supra*.

---

[2](...continued)
does not necessarily fairly present a federal *constitutional* claim to the state courts. For substantially the same reason, the Court is not persuaded by petitioner's argument that an alleged similarity between the state severance rule and the federal severance rule under the Federal Rules of Criminal Procedure leads to the conclusion that the state courts were adjudicating a "federal claim." The claim that must be presented is a federal *constitutional* claim.

[3]*See, e.g., Skilling v. United States*, ___ U.S. ___, 130 S.Ct. 2896, 2948, 177 L.Ed.2d 619 (2010)("the due process right to a fundamentally fair trial"); *Cone v. Bell*, ___ U.S. ___, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)("The right to a fair trial, guaranteed . . . by the Due Process Clause of the Fourteenth Amendment, . . . ."); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)("We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution. Our construction of that Clause will apply equally to the comparable Clause in the Fourteenth Amendment applicable to trials in state courts."); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)("A fair trial in a fair tribunal is a basic requirement of due process.").

1 The Court accordingly concludes that at the very least Ground 2 is exhausted. The
2 Court therefore turns to consideration of the requirements for a *Rhines* stay.

### *Motion for a Stay*

In order to seek a *Rhines* stay to return to the state courts to exhaust a claim or claims, a petitioner must demonstrate that there was good cause for the failure to exhaust the claims, that the unexhausted claims include at least one claim that is not plainly meritless, and that petitioner has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278, 125 S.Ct. 1535.

### *Good Cause*

While the precise contours of what constitutes "good cause" in this context remain to be fully developed in the jurisprudence, the Ninth Circuit has held that a requirement that the petitioner show "extraordinary circumstances" to obtain a stay does not comport with the good cause standard in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). The undersigned concluded in *Riner v. Crawford*, 415 F.Supp.2d 1207 (D.Nev. 2006), following upon the Ninth Circuit's holding in *Jackson*, that the good cause standard under *Rhines* therefore is not so strict a standard as to require a showing of some extreme and unusual event beyond the control of the petitioner to warrant a stay. 415 F.Supp.2d at 1210.[4] On the other hand, *Rhines* instructs that a stay should be available only in "limited circumstances," and the requirement of good cause therefore should not be interpreted in a manner that would render stay orders routine. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2771, 174 L.Ed.2d 276 (2009). Accordingly, a mere impression by a petitioner that a claim was exhausted is not sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every habeas petitioner, at least those

---

[4]In *Riner*, the Court's order was issued following a remand from the Ninth Circuit for reconsideration of its dismissal order in light of the intervening authority in *Rhines*. The Court did not hold that Riner either had or had not demonstrated good cause. The order instead gave Riner an opportunity *to* demonstrate good cause and the other requirements for a *Rhines* stay. Riner thereafter did not seek such a stay but instead sought reconsideration of the Court's prior holding that the claims in question were unexhausted. See,e.g., No. 3:99-cv-0258-ECR-RAM, #72. The published *Riner* decision therefore did not make a definitive holding as to good cause applicable to a then-attempted specific factual demonstration of good cause.

-6-

represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay." *Id.* (emphasis in original).

In the present case, the Court finds that petitioner has demonstrated good cause based upon his being misdirected by the inmate law clerk who prepared his petition directly to federal court rather than first to state post-conviction relief.[5] Such "ineffective assistance" and improper advice by an inmate would not necessarily provide a basis for equitable tolling or cause for a procedural default. However, again, petitioner need not demonstrate circumstances corresponding to those required to overcome a federal limitation or procedural default defense in order to obtain a discretionary stay of the federal habeas proceedings. A lay inmate, particularly one still only in his twenties as petitioner apparently is, certainly on occasion may be misled by another also lay inmate as to the most advisable procedural course to pursue. His action in promptly filing a state post-conviction petition after receiving competent legal advice confirms that the initial decision to file in federal court without first pursuing state post-conviction remedies was the result of petitioner being misadvised.

The Court accordingly finds that petitioner has demonstrated good cause.[6]

***Not Plainly Meritless***

The *Rhines* Court made a comparison cite to 28 U.S.C. § 2254(b)(2) with regard to this inquiry. 544 U.S. at 277, 125 S.Ct. at 1535. The Ninth Circuit has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

---

[5] The federal petition reflects its preparation by a prison law clerk. See #8, at 9.

[6] The Court is not persuaded by respondents' argument that the Court should apply the "extraordinary circumstances" standard applicable under an equitable tolling analysis to the good-cause inquiry under *Rhines*. The Ninth Circuit held in *Jackson* that the "extraordinary circumstances" standard was not applicable in this context, and the Ninth Circuit in *Wooten* adhered to this holding. *Jackson*, 425 F.3d at 661-62; *Wooten*, 540 F.3d at 1023-24. This Court must follow the binding Ninth Circuit precedent in this regard. The Court, consistent with that precedent, will not equate "good cause" with the "extraordinary circumstances" required for equitable tolling. Nor will the Court follow an analysis that potentially would make the procedural question of whether to enter a stay turn upon a full evidentiary hearing as might be required to resolve an equitable tolling issue.

-7-

The unexhausted claims in Grounds 3 through 5 clearly pass muster under this standard.[7] Respondents provide no principled argument to the contrary.

Respondents instead suggest that the Court should find that the claims are "plainly meritless" for purposes of the *Rhines* analysis because they allegedly likely would be procedurally defaulted. Respondents rely upon *Neville v. Dretke*, 423 F.3d 474 (5th Cir. 2005).

At the outset, the Court is not sanguine that this argument has any application to the present case. While respondents urge that Vincent cannot establish cause and prejudice excusing a procedural default, it is not clear to the Court exactly which state procedural bar necessarily will be applied to bar all claims in petitioner's apparently timely and non-successive state post-conviction petition.

In any event, as the Court noted in *Riner*, it is not bound by *Neville* and similar decisions from outside the Ninth Circuit. 415 F.Supp.2d at 1211. Nor is the Court persuaded that it should follow the decisions. Arguably, the decisions do not consider the impact of procedural default at the appropriate point in the proceedings. For example, in this case, if it were established beyond peradventure that the unexhausted claims were procedurally defaulted, the Court would not be considering a possible stay at this point. It would conclude that the claims were constructively exhausted because they indisputably were procedurally defaulted and then potentially dismiss the claims with prejudice on that basis.

In this regard, it is significant that the Nevada state courts apply substantially the same standards to excuse a procedural default as apply in federal court.[8] In such a situation, comity weighs strongly in favor of the state courts being given the first opportunity to consider

---

[7] See #12, at 12-21.

[8] *See, e.g., Mitchell v. State*, 149 P.3d 33, 36 (Nev. 2006)("A petitioner can overcome the bar to an untimely or successive petition by showing good cause and prejudice."); *see also Robinson v. Ignacio*, 360 F.3d 1044, 1052 n.3 (9th Cir. 2004) (recognizing that Nevada's cause-and-prejudice analysis and the federal cause-and-prejudice analysis are nearly identical); *Mitchell*, 149 P.3d at 36 ("Even when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or successive petition, habeas relief may still be granted if the petitioner can demonstrate that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent," citing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

the claims and the application of any state procedural bars.[9]  The prospect thus is avoided that a federal court potentially might find the procedural default overcome and reach the merits of a claim that the state courts in truth never have had a fair opportunity to consider.

Procedural default therefore would appear to be an issue that potentially is relevant prior to and/or after a *Rhines* stay inquiry, but not during.  On the one hand, procedural default potentially may be a relevant issue in advance of a possible stay inquiry, as a potential basis for a holding that a claim is constructively exhausted because it is procedurally defaulted.  If such a holding is made as to a claim, the issue of a stay then never arises as to that claim.  On the other hand, procedural default potentially may be a relevant issue after a stay has been ordered, if the state courts hold during the stay that the claim is procedurally barred under state law.

But it does not appear either that procedural default is an appropriate inquiry as to the stay analysis itself or that *Rhines* contemplated such an inquiry in determining whether a claim is "plainly meritless."  *Rhines* instead cited to 28 U.S.C. § 2254(b)(2), a statute that pertains to a merits dismissal rather than a dismissal based upon a procedural default.  The proper focus under the second *Rhines* factor is on the merits, as to whether "it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett, supra*.

Grounds 3 through 5 satisfy this standard, and the Court accordingly finds that the claims are not plainly meritless.

### *No Intentionally Dilatory Litigation Tactics*

Nothing in the record before the Court reflects that petitioner has engaged in intentionally dilatory tactics.  Indeed, petitioner has sought relief with dispatch, perhaps too much dispatch as to the federal proceedings.  Further, once competently advised, he has pursued state post-conviction remedies also with dispatch.

---

[9]*Cf. Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991)(the exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees); *Cassett*, 406 F.3d at 622-23 (deferring to state courts as to consideration of state procedural bars in the first instance).

While it perhaps is not utterly inconceivable that a noncapital habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor, as a practical matter, largely is restricted to capital cases.[10]

The Court additionally notes that its own delay in completing screening in this case has tended to exacerbate petitioner's procedural situation at this point. At this juncture, based upon the likely assumption that the pending state petition is timely, petitioner would have as little as approximately sixty days after the issuance of the state remittitur to file a timely federal petition absent a stay herein. It appears that petitioner is housed in a maximum security prison at which he can access the prison law library and associated legal resources only indirectly through a paging or "kite" system.[11] During the approximately sixty-day period, petitioner first would need to receive timely notice of the state supreme court's decision, and then obtain the correct necessary forms, compose the federal petition, prepare the accompanying pauper application, obtain the required financial attachments for the pauper application, and mail the foregoing to the Clerk prior to the expiration of the limitation period. The Court has been presented with multiple instances where delays at one or more of these intermediate steps has occurred, particularly in situations where inmates can access the mail receipt, form bank, copying, financial certification, and outgoing mail services of the institution only indirectly through a paging or kite system. A denial of a stay that led to petitioner dismissing the present petition to avoid successive petition issues potentially could result in "cutting things too close" vis-à-vis his timely filing a later federal petition *pro se*.

Judicial delay in a court reaching and resolving pending matters does not necessarily give rise to a basis for equitable tolling or cause for a procedural default. However, in

---

[10] *Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9,127 S.Ct. 1079, 1090 & n.9, 166 L.Ed.2d 924 (2007)(Ginsburg, J., dissenting)("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . . . Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (2011)(petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

[11] See *John Tole Moxley v. Neven*, No. 2:07-cv-01123-RLH-GWF, #25.

1 connection with entry of a discretionary stay, the Court notes the relatively short time
2 remaining in the federal limitation period should a stay be denied.
3 Following consideration of the *Rhines* factors, the motion for a stay accordingly will be
4 granted.[12]

### *Substitution*

The motions for substitution of petitioner's physical custodian as a respondent will be granted. The Court noted in a prior order that petitioner had not named his physical custodian in large part due to the emphasis placed upon the immediate physical custodian being the proper respondent in *Rumsfeld v. Padilla*, 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). It is noteworthy, however, that the petitioner in *Padilla* was a United States citizen held as an enemy combatant in a Navy brig in South Carolina who sought relief under 28 U.S.C. § 2241 in a federal district court in New York. The Supreme Court was not addressing any issue as to whether a state officer other than the immediate physical custodian of a state prisoner could be a proper respondent on a habeas petition filed under § 2254. In this regard, it perhaps may be significant that the 1976 Advisory Committee Notes to Rule 2(a) of the Rules Governing Section 2254 Cases state that "[t]he proper person to be served in the usual case is either the warden of the institution in which the petitioner is incarcerated . . . or the

---

[12]Respondents request that the Court give an instruction to petitioner that, "absent truly extraordinary and unforeseeable circumstances," he must bring only exhausted claims upon his return to federal court. #57, at 11, lines 22-25. Respondents rely upon *Slack v. McDaniel*, 529 U.S. 473, 489, 120 S.Ct. 1595, 1606, 146 L.Ed.2d 542 (2000). The petitioner in that case conceded that such an instruction would be "appropriate" in the procedural context discussed there. That context was one where a *pro se* petitioner had dismissed a prior mixed petition and then refiled in a new action after exhaustion. In *Slack*, the Supreme Court held that such a petition was not a successive petition. The Supreme Court referred to the above instruction as one, of many, possible protections outside of the successive petition rules against a petitioner simply filing a series of mixed petitions. *See* 529 U.S. at 488-89, 120 S.Ct. at 1606. Such an instruction would not serve any useful purpose in the present procedural context, particularly given the impact of the federal one-year limitation period. *Cf. Slack*, 529 U.S. at 478-79, 120 S.Ct. at 1601 (both the first federal petition in 1991 and the second petition in 1995 were filed prior to the effective date of AEDPA). Petitioner is represented by federal habeas counsel who indisputably is aware of the exhaustion requirement, and there are few circumstances where this Court would grant a request for a second stay. Instructing a knowledgeable federal habeas practitioner that the Court will consider further unexhausted claims after a stay only in "truly extraordinary and unforeseeable circumstances," at best, merely states the obvious as to a dispute that may never arise. At worst, such an instruction would provide scant true guidance in resolving such a dispute should the situation arise. The Court will cross the bridge of how to address any additional unexhausted claims, and any circumstances leading to the presentation of such unexhausted claims, if and when such a situation is presented.

chief officer in charge of state penal institutions." This comment reflecting the drafter's intent in Rule 2(a) ultimately may support an authoritative holding by the Supreme Court or Ninth Circuit that a director of a state corrections department is a proper respondent on a § 2254 petition. In the meantime, substitution of petitioner's immediate physical custodian as a respondent removes all doubt in the present case.

IT THEREFORE IS ORDERED that petitioner's motion (#16) for a stay and abeyance is GRANTED and that this action is STAYED pending exhaustion of the unexhausted claims. Petitioner may move to reopen the matter following exhaustion of the claims, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

IT FURTHER IS ORDERED that, taking into account that state post-conviction proceedings already have been commenced, the grant of a stay is conditioned upon petitioner returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[13]

IT FURTHER IS ORDERED that, with any motion to reopen filed following completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s) on the docketing system) containing the state court record materials relevant to the issues herein that cover the period between the state court exhibits on file in this matter and the motion to reopen; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave.[14] Respondents shall have thirty (30) days to file a response to the motion or motions filed. The reopened matter will proceed under the current docket number.

/ / / /

---

[13] If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings. *Cf. Lawrence v. Florida*, 549 U.S. 327, 335, 127 S.Ct. 1079, 1084, 166 L.Ed.2d 924 (2007).

[14] No claims in the current pleadings are dismissed by this order.

1   IT FURTHER IS ORDERED that petitioner's motions (## 11 & 22) to substitute party
2 are GRANTED and that E.K. McDaniel is substituted for the Director, Nevada Department of
3 Corrections, as a respondent herein.[15]
4   IT IS FURTHER ORDERED that the Clerk of the Court shall amend the caption to
5 reflect E.K. Daniel as the named respondent.
6   IT FURTHER IS ORDERED that the Clerk of Court shall ADMINISTRATIVELY CLOSE
7 this action until such time as the Court grants a motion to reopen the matter.
8   DATED this 14th day of July 2011.

_____
EDWARD C. REED
United States District Judge

---

[15] It would appear that the Clerk previously made a corresponding change to the docket sheet when the first amended petition named McDaniel instead as a respondent. No additional clerical action necessarily is required by the Clerk following upon this order in this regard. The Court's order confirms the substitution of McDaniel as a respondent and clears the pending motions.